## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF TWO CELLULAR TELEPHONES FURTHER DESCRIBED IN ATTACHMENT A, CURRENTLY LOCATED AT THE MARYLAND STATE POLICE BARRACK IN EASTON, MARYLAND** | **19 - 2 4 8 5  JMC** <br><br> **Case No.** _____ <br><br> **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A
## SEARCH WARRANT

I, Special Agent Paul L. Dass of the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF"), being duly sworn, depose and state as follows:

### INTRODUCTION

1.      This is an Affidavit provided in support of an application for a search warrant

pursuant to Federal Rule of Criminal Procedure 41.   Specifically, I seek a search and seizure

warrant authorizing the search and seizure of the following property, more fully described in

Attachment A, for evidence that Andrew Tyler LEWIS and Shelby Leigh O'DONNELL violated

21 U.S.C. §§ 841 and 846, conspiracy to possess and possession with the intent to distribute

controlled dangerous substances:

   a.   One black iPhone with black Otter Box case
   b.   One black iPhone with clear and blue case (hereinafter, the "**TARGET DEVICES**")

2.      The applied-for search warrant would authorize the forensic examination of the

**TARGET DEVICES** for the purpose of identifying and extracting electronically stored data

1



FILED _____ ENTERED
LOGGED _____ RECEIVED

AUG 0 6 2019



AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

19-2485 JMC

particularly described in Attachment B by ATF or their authorized representatives, including but not limited to other law enforcement agents assisting in this investigation.

3.      The ATF has been investigating LEWIS for violations of 21 U.S.C. §§ 841 and 846 since approximately January 2019. On July 17, 2019 the Maryland State Police ("MSP") seized seven pounds of suspected marijuana and approximately 5,000 THC vaping cartridges during a traffic stop of LEWIS and O'DONNELL in Frederick, Maryland. They also seized the **TARGET DEVICES** from the passenger compartment of the vehicle. As detailed below, I believe LEWIS and O'DONNELL keep and conceal in the **TARGET DEVICES** evidence of communications, electronic messages, web-based applications, photos, and other evidence revealing the scope of the conspiracy, the identity of other members, and their methods of drug trafficking and the laundering of proceeds of drug trafficking.

### AFFIANT BACKGROUND

4.      I am currently a Special Agent with the ATF assigned to the Hyattsville I Field Office. I have been employed by the ATF since March 2018. I have successfully completed the Federal Law Enforcement Training Center Criminal Investigator Training Program and the ATF Special Agent Basic Training program for a combined period of 26 weeks. Prior to my tenure with the ATF, I was a criminal investigator with the U.S. Environmental Protection Agency handling protective intelligence. Prior to I was a criminal investigator and a sworn federal police officer with the Pentagon Force Protection Agency, Arlington, Virginia; I was also a military police officer in the United States Army for five years, which included a fifteen-month deployment to Iraq.

19 - 2 4 8 5 JMC

5.      In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of proceeds derived from the sale of narcotics, and the organization of drug conspiracies. Based on my knowledge and experience, individuals involved with trafficking contraband frequently use cellular telephones in furtherance of their illegal activities. In addition, I know that individuals engaging in CDS trafficking often use cellular phones to obtain and/or dispose of CDS. These individuals often contact customers and/or sources of CDS supply by utilizing cellular phones. Also, individuals who are prohibited from legally purchasing firearms sometimes attempt to obtain firearms from associates who can otherwise access, obtain, or purchase firearms.

6.      In the course of my training and experience, I know that digital cellular telephones permit drug traffickers to remain in constant communication with one another via voice, text messaging, and e-mail. I know that drug traffickers often have stored in their phones: (1) the telephone numbers and digital display codes used by accomplices, aiders and abettors, co-conspirators, and participants in these illegal activities; (2) the identities of co-conspirators, customers, and criminal associates based upon subscriber information derived from the retrieved phone numbers and names associated with them; (3) stored text and e-mail messages identifying possible co-conspirators or identifying or discussing certain drug transactions; and (4) stored digital images and movies, depicting evidence and fruits of the above listed crime. I also know that narcotics dealers often use multiple cellular telephones for the purpose of communicating with the narcotics sources of supply and customers.

19 - 2 4 8 5 JMC

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

## PROBABLE CAUSE

8.      On April 8, 2019, members of the Metropolitan Area Drug Task Force (MADTF) working at Baltimore-Washington International Airport (BWI) received a tip from an anonymous source (CS-1) regarding LEWIS. CS-1 said LEWIS frequently travels to California to purchase large amounts of marijuana. CS-1 said that LEWIS was possibly leaving for California the morning of April 8, 2019. As a result, investigators initiated surveillance at BWI. At approximately 6:16 AM, investigators observed LEWIS at the Spirit Airlines ticket kiosk within BWI airport. His scheduled flight was Spirit Airlines Flight NK141 from BWI to Los Angeles, California-LAX. One investigator detected an odor of marijuana emitting from LEWIS' suitcase. During the screening of LEWIS' luggage by the Transportation Security Administration (TSA), TSA Officers noticed a large amount of money bundled together and stored within shoes and a brown zip-up container. Sixteen bundles of money held together with rubber bands were concealed within LEWIS' suitcase. The total amount was $76,796. TSA Officers also located a small amount of marijuana. Investigators interviewed LEWIS about the contents of his suitcase. He was not truthful about the amount of money he was in possession of, and LEWIS could not provide any receipts or documentation that could explain how he obtained the currency. He

4

19 - 2 4 8 5 JMC

initially said he travels to California every two weeks to purchase glassware for his business, then

recanted his story and advised the currency was not for a business and that he was just traveling to

California to spend the money on whatever he wanted. TSA released LEWIS' luggage to MADTF

investigators.[1]

9.      The luggage tag on LEWIS' suitcase displayed the telephone number 410-829-

9943. On April 10, 2019, a MADTF investigator called the number and spoke to LEWIS. Also,

investigators reviewed the subscriber information contained within call detail records for the

phone. According to the records, LEWIS is the subscriber.

10.      MADTF investigators obtained records from Spirit Airlines and found that Lewis

traveled to LAX (California) from BWI (Maryland) or from BWI to LAX on Spirit Airlines twelve

times from October 2018-April 2019. The records show he took eight trips to California during

this time frame. Five of those flights were booked one to three days prior to departure. His stay

was typically three to five days. Based on my training and experience as well as the training and

experience of other investigations who have used confidential informants (CI) and undercover

investigators (UC) to conduct controlled CDS purchases, individuals traveling to purchase CDS

typically do not have set schedules for their purchases. Therefore, they will sometimes plan CDS

transactions only days or hours in advance.

---

[1] A Maryland Transportation Authority (MTA) Officer issued LEWIS a civil citation for possession of marijuana
(less than 10 grams).

19 - 2 4 8 5 JMC

11.     On June 17, 2019, investigators requested and obtained a federal search and seizure warrant to track the LEWIS's phone. This search warrant was signed by the Honorable Stephanie A. Gallagher, U.S. Magistrate Judge for the District of Maryland.

12.     On the evening of July 10, 2019, investigators noticed LEWIS's phone was traveling west from Maryland. On July 12, 2019, at approximately 9:00 p.m. LEWIS's phone arrived in the Los Angeles, California area. Three days later, on July 15, 2019, at approximately 10:15 a.m., LEWIS's phone appeared to depart the Los Angeles, California area.

13.     On July 17, 2019 at approximately 4:00 a.m., MSP conducted a traffic stop for speeding on a White Lincoln MKZ bearing Maryland license plate number 4CHE25 in Frederick, Maryland. LEWIS and O'DONNELL were in the vehicle. As the MSP Trooper came in contact with LEWIS and O'DONNELL, he detected a strong odor of what he believed to be marijuana, based on his training and experience. The Trooper recovered approximately seven pounds of suspected marijuana, approximately 5,000 THC vaping cartridges, and the **TARGET DEVICES** in the vehicle pursuant to a search.

14.     Investigators believe these phones belonged to and were used by O'DONNELL and LEWIS due to their presence in the vehicle and the tracking of LEWIS's phone. In fact, when investigators interviewed O'DONNELL, she provided the passcode for her phone, which she identified as the black iPhone with the clear and blue case.

15.     During a recorded jail call on July 17, 2019, LEWIS told O'DONNELL the police valued the seized marijuana at three hundred thousand dollars on his charging papers. LEWIS then described that value as "twice as much as what I planned on making." LEWIS told

6

## 19 - 2 4 8 5 JMC

O'DONNELL to go home, get all the important stuff and take it to "super K." LEWIS told her to tell him, "super K," to take it somewhere else other than his place. O'DONNELL said she would. Based on my training and experience, LEWIS appears to be instructing O'DONNEL to get rid of any remaining contraband.

### CONCLUSION

16.     Based on the above mentioned facts, I submit there is probable cause to support a warrant to search the **TARGET DEVICES** described in Attachment A and seize the items described in Attachment B, associated with the distribution of and conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841 and 846.

Paul E. Dass
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed to and sworn to me this ____ day of July, 2019.

J. Mark Coulson
United States Magistrate Judge

FILED _____ ENTERED
LOGGED _____ RECEIVED

AUG 0 6 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

7